IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRITTANY STAMPS,

        Plaintiff,

vs.                              Case No. 12-1100-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On April 8, 2011, administrative law judge (ALJ) Michael A. Lehr issued his decision (R. at 14-24). Plaintiff alleges that she has been disabled since July 6, 2008 (R. at 14). Plaintiff is insured for disability insurance benefits through March 31, 2011 (R. at 16). At step one, the ALJ found that plaintiff has

not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 16). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine (R. at 16). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18). After determining plaintiff's RFC (R. at 19), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 23). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 23). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24).

**III. Did the ALJ err in his consideration of the evidence regarding plaintiff's mental impairments, and the weight that should be accorded to such evidence when assessing plaintiff's RFC?**

On August 26, 2009, Dr. Mayhew, a board certified psychologist, prepared a consultative psychodiagnostic disability assessment on the plaintiff (R. at 205-206). He found that plaintiff had a GAF of 50,[1] and made the following recommendations:

---

[1] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> Brittany is a 24 year old female who alleges
> disability due to anxiety and chronic pain
> due to lumbar spinal stenosis. The results
> of this examination are believed to be
> reliable and valid. This claimant appeared
> to put forth adequate effort.
>
> Brittany's capacity to understand, retain,
> and follow work-related instructions and
> procedures is considered impaired due to
> pain and anxiety. Sustained attention,
> concentration, and reasonable pace at entry-
> level work-like tasks is estimated to be
> markedly limited. Monitoring by work
> supervisors would likely be required. Her
> capacity to interact appropriately with
> supervisors, co-workers, and the general
> public is considered markedly impaired.
> Difficulties working in close proximity to
> others is anticipated. Brittany's capacity
> to tolerate stress and pressure of simple,
> unskilled work, and to respond appropriately
> is estimated to be markedly limited. If
> Brittany is determined eligible for
> benefits, she would appear capable of
> managing them.

(R. at 206). Subsequently, on November 12, 2009, Dr. Schulman, a non-examining medical source, prepared a psychiatric review technique form which opined that plaintiff had moderate limitations in two of four broad categories (difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence and pace) (R. at 216-228). Dr.

---

41-50: Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)...

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

Schulman also prepared a mental RFC assessment which opined that plaintiff was moderately limited in the following categories:

> The ability to understand and remember detailed instructions.
>
> The ability to carry out detailed instructions.
>
> The ability to maintain attention and concentration for extended periods.
>
> The ability to work in coordination with or proximity to others without being distracted by them.
>
> The ability to interact appropriately with the general public.

(R. at 212-213).

The ALJ stated the following regarding the opinions of Dr. Mayhew:

> The limitations noted by Dr. Mayhew are not well supported by or consistent with the claimant's treatment notes or with the claimant's own reports.
>
> For example, the claimant indicated on a *Function Report-Adult* that she is able to pay bills, handle a savings account, count change, watch television, and read, and reported that she has no difficulty getting along with authority figures (Exhibit 7E). Further, Dr. Mayhew seems to rely considerably on claimant's description of her symptoms. However, the medical evidence as discussed above shows that the claimant is not fully credible in his allegations of disabling impairments nor is that assessment consistent with other medical evidence. Although the claimant has some impairment in social interaction and concentration, they are only mild. As the limitations assessed

>     by Dr. Mayhew are inconsistent with the
>     evidence of record, his opinion is given
>     little weight.

(R. at 18).

The ALJ also discussed the mental RFC assessment prepared by Dr. Schulman. The ALJ stated the following:

> …considering the record as a whole,
> including all medical evidence as well as
> the testimony presented at the hearing, and
> the residual functional capacity found is,
> thus, based upon evidence that was not
> available to State agency medical
> psychologists.

(R. at 18).

Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal. However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe." Hill v. Astrue, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008); Dray v. Astrue, 353 Fed. Appx. 147, 149 (10th Cir. Nov. 17, 2009).

Plaintiff concedes that the failure to list plaintiff's mental impairment as "severe" at step two, is not, of itself, reversible error. However, plaintiff argues that the ALJ erred by failing to include mental limitations in plaintiff's RFC, and

plaintiff specifically referenced the report and opinions from Dr. Mayhew in her brief (Doc. 11 at 11, 5).

The ALJ stated that Dr. Mayhew "seems to rely considerably on claimant's description of her symptoms" (R. at 18). However, Dr. Mayhew indicated the following in his report:

> Sources of information include self-report/observation and review of medical records produced by Dr. Tyson Burden, M.D. … Brittany is believed to be a fair historian, providing generally consistent information.

(R. at 205). Dr. Mayhew's observations and examination also included the following:

> Digit repetition(phone number): failed even though adequate effort appeared evident
>
> Numerical calculations: failed due to difficulty with concentration

(R. at 205). As previously noted, Dr. Mayhew found the results of the examination to be reliable and valid (R. at 206).

In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative

9

> inferences from medical reports and may
> reject a treating physician's opinion
> outright only on the basis of contradictory
> medical evidence and *not due to his or her
> own credibility judgments, speculation or
> lay opinion*." McGoffin v. Barnhart, 288 F.3d
> 1248, 1252 (10th Cir.2002) (quotation
> omitted; emphasis in original). And this
> court "held years ago that an ALJ's
> assertion that a family doctor naturally
> advocates his patient's cause is not a good
> reason to reject his opinion as a treating
> physician." Id. at 1253.

As Langley makes clear, the ALJ must have either a legal or evidentiary basis for asserting that a medical source report was based only or primarily on plaintiff's subjective complaints. However, the ALJ did not have either a legal or evidentiary basis for this assertion. In fact, the report of Dr. Mayhew indicates that his sources of information were plaintiff's self-report, observation, review of medical records, and testing which he performed on the plaintiff.

Furthermore, the practice of psychology is necessarily dependent, least in part, on a patient's subjective statements. Thomas v. Barnhart, 147 Fed. Appx. 755, 759-760 (10th Cir. Sept. 2, 2005); Miranda v. Barnhart, 205 Fed. Appx. 638, 641 (10th Cir. Aug. 11, 2005). A psychological opinion may rest either on observed signs and symptoms or on psychological tests. Langley v. Barnhart, 373 F.3d 1116, 1122 (10th Cir. 2004); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). The ALJ cannot reject a psychologist's opinion solely for the reason that it

10

was based on a claimant's responses because such rejection impermissibly substitutes the ALJ's judgment for that of the psychologist. Thomas, 147 Fed. Appx. at 760; Miranda, 205 Fed. Appx. at 641. Given the fact that a psychological report is dependent, least in part, on a patient's subjective statements, and the fact that Dr. Mayhew did not just rely on plaintiff's self-reporting, but also on Dr. Mayhew's own observations, a review of medical records, and a mental status examination/testing, the court finds that the ALJ erred by discounting the opinion of Dr. Mayhew because it seemed to "rely considerably" on claimant's description of her symptoms.

The ALJ also discounted the opinion because it was not consistent with the other medical evidence. However, the only other medical evidence that directly addressed plaintiff's mental impairments and limitations, and therefore the opinions of Dr. Mayhew, was the state agency assessment by Dr. Schulman. Although Dr. Schulman questioned some of the opinions expressed by Dr. Mayhew (R. at 228), Dr. Schulman nonetheless found that plaintiff was moderately impaired in five mental RFC categories, as noted above. However, the ALJ never assessed the opinions of Dr. Mayhew in light of those of Dr. Schulman, and furthermore, the ALJ did not include any of the moderate impairments found by Dr. Schulman in plaintiff's RFC. The ALJ simply stated that the RFC was based upon evidence not available to Dr. Schulman (R. at

18), but it is not at all clear from the ALJ opinion what evidence supported his decision not to include any of the five moderate mental limitations in Dr. Schulman's mental RFC assessment. There is certainly no medical opinion evidence that disputes or contradicts the opinions of Dr. Schulman.

Plaintiff contends that the ALJ erroneously failed to consider her anxiety in assessing her RFC (Doc. 11 at 11). In light of the ALJ's erroneous reasons for discounting the opinions of Dr. Mayhew, and the lack of any medical evidence that plaintiff has no mental limitations that should have been listed in plaintiff's RFC, the court finds that substantial evidence does not support the ALJ's determination not to include any mental limitations in plaintiff's RFC. Therefore, this case shall be remanded in order for the ALJ to further consider the severity of plaintiff's mental impairment, and its impact, if any, on plaintiff's RFC.[2]

**IV. Did the ALJ err in his credibility analysis?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However,

---

[2] Defendant cited to the case of Grede v. Astrue, 443 Fed. Appx. 323 (10th Cir. Sept. 27, 2011) as a case almost identical to the one before the court (Doc. 16 at 18). However, in Grede, the court found that the evidence did not demonstrate any significant mental health impairments or that plaintiff exhibited any significant mental and/or emotional deficits. 443 Fed. Appx. at 325. In fact, the court in Grede, 443 Fed. Appx. at 326, cited to Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004), which noted that when an ALJ discusses medical evidence in detail and that evidence does not conflict with the ALJ's conclusions, the need for the ALJ to expressly analyze evidence is weakened. Unlike Howard and Grede, in the case before the court, the opinions of Dr. Mayhew and Dr. Schulman both clearly conflict with the ALJ's RFC findings.

findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is

linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ's credibility analysis included the following:

> Further, the claimant's daily activities are consistent with the above residual functional capacity assessment but are inconsistent with the disability allegations. While the claimant ultimately alleged she is unable to work due to low back pain, her contentions are not supported

14

> by her daily activities that showed, near
> the time of filing, that she was able to:
> (1) care for her two young children with
> some help from her husband and mother-in-
> law; (2) prepare simple meals daily; (3)
> fold laundry and start the washing machine;
> (4) vacuum, though indicated her spouse does
> any involved lifting; [5] pay bills, count
> change, and use a checkbook; [6] watch
> television; [7] read; and [8] spend time
> with her husband and family…This level of
> ability is consistent with residual
> functional capacity established herein.

(R. at 22). The ALJ also relied on these same activities to discount the opinion of Dr. Mayhew (R. at 18; she is able to pay bills, handle a savings account, count change, watch television and read).

According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2012 at 398). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

15

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.** As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability. In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries. We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends. We found this to be an unpersuasive reason to deny benefits: "**We have repeatedly held...that 'the ability to do activities such as light**

> **housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work**.'" Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner
>
>> **that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity**.
>
> Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

According to the regulations, activities such as household tasks are generally not considered to constitute substantial gainful activity. As the case law makes clear, the ability to perform light housework or visit with friends or family provides little or no support for a finding that a claimant can perform full-time competitive work. Certainly, the ability to watch TV or read provides little or no support for a finding that a claimant can perform full-time competitive work. The daily activities, as listed by the ALJ, do not demonstrate that plaintiff is capable of working. Therefore, on remand, the ALJ

17

shall make new credibility findings consistent with the regulations and case law set forth above, and after reassessing plaintiff's mental impairments, as set forth above.

**V. Did the ALJ err in his consideration of the treatment notes of Dr. Burden?**

Plaintiff argues that the ALJ made only cursory mention of the treatment notes from Dr. Burden (Doc. 11 at 8), and failed to discuss evidence from those notes that would support plaintiff's claims (Doc. 11 at 8-10). Although the record must demonstrate that the ALJ considered all of the evidence, an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects. Clifton v. Chater, 70 F.3d 1007, 1009-1010 (10th Cir. 1996); see Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008). The court must make sure that the ALJ gave the relevant evidence due consideration. Andersen v. Astrue, 319 Fed. Appx. 712, 721 (10th Cir. Apr. 3, 2009). Furthermore, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).

In light of the fact that this case is being remanded for other reasons, the court will not address this issue in detail. However, the court does not find any clear error by the ALJ in his discussion of the medical records from Dr. Burden. The court will note that there is no medical source opinion that disputes the ALJ's physical RFC findings, and plaintiff does not cite to any part of the medical records of Dr. Burden that clearly conflict with the ALJ's RFC findings. However, in light of the need for the ALJ to reassess plaintiff's mental limitations, and her credibility, the ALJ shall reexamine the records of Dr. Burden in order to determine their impact, if any, on the resolution of these two issues.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 20th day of February, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge